UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JAMES WEBB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 2:16-cv-00352-WTL-MJD |
| ) | |
| MARK BENDER, ) | |
| *et al.* ) | |
| ) | |
| Defendants. ) | |

**Entry Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

**I.  Background**

Plaintiff James Webb ("Mr. Webb") is a state prisoner currently confined at the Wabash Valley Correctional Facility ("Wabash"). Mr. Webb filed his complaint on September 12, 2016, alleging that defendants Nurse Mark Bender, Dr. Neil J. Martin, and Nurse Kimberly A. Hobson were deliberately indifferent to his broken hand in violation of the Eighth Amendment. He alleges that Nurse Bender put a cast on his right broken hand on October 3, 2014, at the direction of Dr. Martin without his hand being examined by a doctor or x-rayed, causing the loss of movement of all four fingers on his right hand and constant pain in that hand.

The defendants filed a motion for summary judgment seeking resolution of the claims against them on the basis that Mr. Webb failed to exhaust his available administrative remedies. Mr. Webb opposed the motion for summary judgment and the defendants replied.

For the reasons explained in this Entry, the defendants' motion for summary judgment [dkt. 15] must be **granted.**

1

## II. Discussion

*A.     Legal Standards*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to

properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

    B.    *Undisputed Facts*

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Mr. Webb as the non-movant, are undisputed for purposes of the motion for summary judgment:

At all times relevant to his claims in this suit, Mr. Webb was incarcerated at Wabash. The current version of the Indiana Department of Correction ("IDOC") Grievance Process went into effect April 5, 2015. The prior version went into effect January 1, 2010. Dkt. 17-1, dkt. 17-2, dkt. 17-3. Mr. Webb was injured on October 3, 2014, while the prior version was in effect. His informal grievance was not submitted until 2015, when the current version became effective.

The purpose of the Offender Grievance Process is to provide administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement. All offenders are made aware of the Offender Grievance Process during orientation and are provided a copy of the Offender Orientation Handbook which includes a section on the grievance process.

The IDOC recognizes only one grievance process. The complete Grievance Process consists of three stages: (i) an informal attempt to solve a problem or address a concern, which can be followed by (ii) submission of a written form outlining the problem or concern and other

supporting information, and the response to that submission, which can be followed by (iii) a written appeal of the response to a higher authority and the response to that appeal.

Under the old and new grievance procedures, an offender is required to attempt to resolve a complaint informally before filing a formal grievance. Under the old grievance procedures, the offender could do this by discussing the complaint with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurred. Under the new grievance procedures, the inmate must complete form OFFENDER COMPLAINT-INFORMAL PROCESS LEVEL, State Form 52897. Under the old and new grievance procedures, if an inmate is unable to resolve his complaint informally, he may file a Formal Grievance by submitting a completed Form 45471, "OFFENDER GRIEVANCE," no later than 20 business days from the date of the incident giving rise to the complaint or concern.

Under the old version of the Grievance Process in effect in 2014, the Offender Grievance Specialist was required to review the grievance form within two working days of receiving it and either accept it and log it, or reject it. Dkt. 17-1, dkt 17-3. The Offender Grievance Specialist had 15 business days from the date the grievance was received to complete an investigation and provide a response to the offender unless the time was extended. *Id*. If there were questions about the timeliness of the grievance, the Executive Assistant was required to investigate those as well. If such investigation showed that the grievance had not been submitted in a timely manner and the offender showed no good reason for missing the deadline, the grievance should be denied for that reason. The Executive Assistant was permitted to proceed to the merits of the grievance if he or she wished, but in that event the Executive Assistant was required to make it clear that the

4

grievance was being rejected as untimely and any other comments were made in addition to that determination. *Id*.

Under the version of the Grievance Process in effect in 2014, grievance appeals were required to be submitted within 10 working days from the date of receipt of the grievance response. Dkt. 17-1, ¶ 13. If the offender received no grievance response within 25 working days of the day he submitted the grievance, he was permitted to appeal as though the grievance had been denied. The Department Offender Grievance Manager was required to complete his or her investigation and submit a response to the appeal within 20 working days from the date of receipt. The Department Offender Grievance Manager could take one extension of 20 working days, but after that time the appeal was deemed denied. The decision of the Department Offender Grievance Manager was final. *Id*.

During the time Mr. Webb was incarcerated at Wabash, he filed three Formal Grievances after October 3, 2014, the date of his hand injury, all of which were appealed to Level II: Grievance 85017, Grievance 88446, and Grievance 88823. The first two grievances did not involve the claims that were brought in this action.

Based on the date of Mr. Webb's hand fracture in 2014, his grievance would have been handled under the old Grievance Process which allowed up to 20 days from the date of the incident to file a formal grievance. In his third grievance, 88823, Mr. Webb filed his informal grievance on August 14, 2015, alleging that his hand was broken on October 3, 2014. Dkt. 17-7, p.1. The Director of Nursing responded on August 18, 2015, and he filed his Formal Grievance on August 27, 2015. In that grievance, Mr. Webb complained that on October 3, 2013, [sic] his hand was broken. Dkt. 17-7, p. 2. He claimed a male nurse put his hand in a hard cast without it being x-rayed or him being examined by a doctor. He stated that after the cast was replaced with

5

a half cast, he was told he would be called back to medical in five to six weeks but he never was. He further complained that he had to file an informal grievance to get back to medical and a grievance he filed July 21, 2015, was not allowed. Mr. Webb claimed he was denied medical care and was not being allowed to bring a grievance.

On September 29, 2015, the Grievance Specialist denied the grievance as untimely, and also responded to the grievance on the merits. The Grievance Specialist noted that his informal grievance response showed medical wondering why he waited so long to get back to them if he had an issue. They performed an x-ray of his hand and it showed a healed fracture. The Grievance Specialist suggested that Mr. Webb contact medical if he had further issues. Dkt. 17-7, p. 3.

Mr. Webb filed an appeal of Grievance 88823 on October 9, 2015. Dkt. 17-7, p. 7. On October 29, 2015, the appeal was denied. The Final Level of Review concurred with the Grievance Specialist's response in finding the grievance was untimely. Dkt. 17-7, p. 8.

*C. Analysis*

Mr. Webb argues that he completed the administrative process regarding Grievance #88823. He contends that he had written to the Superintendent and Commissioner and they told the Grievance Specialist to respond to the grievance on the merits. In other words, Mr. Webb argues that even though his grievance was untimely filed, it was addressed on the merits through all steps of the process and, therefore, his claim against the defendants should be allowed to proceed in this case. His theory is not supported by case law nor does it change the fact that the Grievance Specialist denied Grievance 88823 as untimely.

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "The exhaustion requirement is interpreted strictly;

thus, a prisoner must comply with the specific procedures and deadlines established by the prison's policy." *Pyles v. Nwaobasi,* 829 F.3d 860, 864 (7th Cir. 2016) (internal quotation omitted). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "Unexhausted claims are procedurally barred from consideration." *Pyles,* 829 F.3d at 864. Here, it is undisputed that Mr. Webb did not timely initiate the grievance process. Although the Grievance Specialist chose to respond to the merits of his claim, she also explicitly stated she was denying the grievance because it was untimely. Under either the old or new grievance policy, the grievance was out of time.

Mr. Webb also contends that he could not possibly file a grievance in a timely manner because he did not know why his hand was in a cast or that his hand was broken until after the 20 day period had run. This contention is not persuasive because even if he did not know his hand was broken until the end of November 2014, he still did not file a grievance within 20 working days of that time. Grievance #88823 was not filed until several months later, in August of 2015. There is no set of circumstances under which Grievance #88823 could be considered timely filed.

Because Mr. Webb failed to timely initiate the exhaustion process with respect to his claim in this action, in light of 42 U.S.C. § 1997e(a), this action should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice.").

### III. Conclusion

For the reasons explained above, the defendants' motion for summary judgment [dkt. 15] is **granted**. Final judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/27/17

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

JAMES WEBB
920832
WABASH VALLEY CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronically registered counsel